UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| JOHN G. WESTINE, ) | |
| ) | |
| ) | Action No. 3:15-CV-9-GFVT |
| Petitioner, ) | |
| ) | |
| v.  ) | **MEMORANDUM OPINION** |
| ) | **&** |
| BILLY ROBERTS, *Jailer*, ) | **ORDER** |
| ) | |
| Respondent. ) | |

\*\*\*\*    \*\*\*\*    \*\*\*\*    \*\*\*\*

John G. Westine, Jr., is an inmate confined in the Grayson County Detention Center, located in Leitchfield, Kentucky. On January 21, 2015, while confined in the Franklin County Jail located in Frankfort, Kentucky, Westine filed the instant *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 [R. 1].[1] Westine challenges his 1992 Ohio federal conviction for money laundering, alleging that he is actually innocent of the offense, and that he is entitled to relief from that conviction under § 2241 by way of the savings clause of 28 U.S.C. § 2255.[2] Westine seeks an order vacating his 1992 money laundering conviction and his resulting sentence.

In conducting an initial review of habeas petitions under 28 U.S.C. § 2243, the Court must deny the relief sought "if it plainly appears from the petition and any attached exhibits that

---

[1] The Court must address Westine's § 2241 petition because jurisdiction over a § 2241 petition is determined at the time the proceeding is filed, and the subsequent transfer of the prisoner will not defeat habeas jurisdiction. *See White v. Lamanna*, 42 F. App'x. 670, 671 (6th Cir. 2002); *Walker v. Hogsten*, No. 10-CV-276-ART, 2011 WL 2149098, at \*2, n. 2 (E.D. Ky. May 31, 2011).

[2] According to the Bureau of Prisons' ("BOP") website, Westine (BOP Register No. 93555-012), is not listed as being in the BOP's custody. *See* http://www.bop.gov/inmateloc/ (last visited on May 26, 2015).

the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)).  Because Westine is not represented by an attorney, the Court evaluates his petition under a more lenient standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003), and liberally construes his claims.

Having reviewed Westine's habeas petition, the Court will require a limited response, of no more than ten (10) pages, excluding attachments, from the Respondent as to one issue which Westine asserts in this proceeding.

**I**

On October 23, 1991, a federal grand jury in Ohio returned a thirty-six count indictment against Westine, charging him with conspiracy to commit mail fraud, wire fraud, the interstate transportation of property taken by fraud, and money laundering, in violation of 18 U.S.C. § 371; interstate transportation of property taken by fraud, in violation of 18 U.S.C. §§ 2314 and 2; mail fraud, in violation of 18 U.S.C. §§ 1341 and 2; wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; and money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i)-(B)(i) and 2.  *See United States v. John G. Westine, Jr.*, 21 F.3d 429, 1994 WL 88831, *1 (6th Cir. 1994) (table) (unpublished decision).  The jury found Westine guilty on all counts.

On July 2, 1992, Westine was sentenced to a 235-month term of imprisonment and a 3-year term of supervised release.  Westine appealed, arguing that the Government's evidence did not support the conviction for money laundering, and that his attorney's failure to raise this issue at trial resulted in a denial of his Sixth Amendment right to effective representation by counsel.  The Sixth Circuit Court of Appeals concluded that both of these arguments lacked merit and

affirmed Westine's conviction. *United States v. Westine*, 21 F. 3d 429, 1994 WL 88831 (6th Cir. Mar. 17, 1994) (table) (*per curiam*).[3]

Because Westine filed so many unsuccessful collateral attacks on his conviction and sentence, the Sixth Circuit eventually entered an order in September 2002 prohibiting him from filing any document, either in the Ohio district court or the Sixth Circuit, challenging his 1992 convictions. *See United States v. Westine*, No. 1:01-CR-127-CBR [R. 337, therein; *see also In re: John G. Westine, Jr.*, No. 02-3737 (6th Cir. Sept. 17, 2002).] That Order did not, however, deter Westine from filing collateral challenges in other district courts throughout the country as he was moved from one BOP facility to another. Westine's numerous civil actions challenging

---

[3] The Sixth Circuit described Westine's criminal enterprise as follows:

…the evidence at trial revealed that between April and June of 1989, Westine devised a scheme to defraud investors of millions of dollars. Tri-State Development ("Tri-State"), a bogus entity, served as the centerpiece of the plan, which involved using high-pressure telephone tactics to sell interests in non-existent oil-well projects in Indiana and Illinois, as well as in a non-existent tanker load of crude oil.

Westine conducted his telemarketing operations out of a number of small offices in southern California. Using the alias "Michael Fairchild," Westine and his salespersons told potential customers that they were calling from Cincinnati, Ohio-the purported headquarters of Tri-State. To create the illusion of a Tri-State home office, Westine hired a secretarial service in Cincinnati to answer customer inquiries. All investors were instructed to send their purchase money via Federal Express to that address. To complete his plan, Westine had an accomplice rent an office in Cincinnati and open a number of different bank accounts in the area to deposit the investors' payments.FN2

A convoluted and multi-faceted banking structure allowed Westine to manipulate the dispersement of the funds in an attempt to render them untraceable. Some of the fraud proceeds were transferred into a separate Cincinnati bank to create a fund for making "royalty payments" back to the defrauded investors, but the bulk of the funds were wire transferred to Westine in California. Westine then moved the funds to fourteen other accounts that he controlled-none of which bore the name of Tri-State Development…. Using both personal and cashier's checks, Westine shuffled the funds among the California accounts and proceeded to spend them on a variety of personal goods and services.

In sum, of the $3.4 million collected, Westine returned approximately ten percent to investors in the form of "royalty payments," used ten percent for the Cincinnati office expenses, and paid ten percent to his salespersons as commissions. The remaining seventy percent went directly to Westine for his personal use. Based upon the foregoing evidence, the jury found Westine guilty on all counts.

*Westine*, 21 F.3d 429, 1994 WL 88831, at *1.

his 1992 criminal convictions are listed, and can be found, by accessing **PACER**, the federal judiciary's on-line data base.

In August 2014, Westine was indicted in this Court, charged with several counts of mail fraud, money laundering, and securities fraud, for his role in allegedly duping investors into purchasing interests in non-profitable oil wells. *United States v. John G. Westine, Jr.*, No. 3:14-CR-10-GFVT-REW-1 (E.D. Ky. 2014). The case went to trial, and on January 16, 2015, the jury found Westine guilty of several counts of mail fraud, money laundering, and securities fraud, in violation of 18 U.S.C. §§ 1341, 1956(a)(1)(B), and 1956(h), as well as 15 U.S.C. § 78(j)(b). [*Id*., R. 192; R. 193, therein.] The jury acquitted Westine of one count of mail fraud. [*Id*.] Westine has not been sentenced in the 2014 criminal proceeding.

**II**

Westine contends that his 1992 money laundering conviction (Count 36 of the Indictment) violates his right to due process of law guaranteed by the Fifth Amendment of the U.S. Constitution. Specifically, Westine alleges that the district court lacked subject matter jurisdiction over Count 36, and that at sentencing, the district judge violated Federal Rule of Criminal Procedure 32(c)(5) by failing to inform him of his statutory right to appeal an illegal sentence, as required by 18 U.S.C. § 3742.

Westine next alleges that based on *United States v. Santos*, 553 U.S. 507, 128 S. Ct. 2020 (2008), his money laundering conviction under Count 36 of the Indictment should be set aside, because in *Santos*, the Supreme Court ruled that spending proceeds for business/normal operating expenses does not qualify as money laundering under 18 U.S.C. § 1956(h). Westine asserts that based on *Santos*, a merger problem exists as to his money laundering and mail fraud

convictions. Westine further contends that *Santos* applies retroactively to his case, and that he is actually innocent of the money laundering offense of which he was convicted in his 1991 criminal proceeding. Based on *Santos*, Westine seeks an order setting aside his money laundering conviction.

**A**

As a general rule, 28 U.S.C. § 2255 provides the correct avenue to challenge a federal conviction or sentence, whereas a federal prisoner may file a § 2241 petition if he is challenging the execution of his sentence (*i.e.*, the BOP's calculation of sentence credits or other issues affecting the length of his sentence). *See United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001); *see also Charles v. Chandler*, 180 F.3d 753, 755–56 (6th Cir. 1999). The Sixth Circuit explains the difference between the two statutes as follows:

> [C]ourts have uniformly held that claims asserted by federal prisoners that seek to challenge their convictions or imposition of their sentence shall be filed in the [jurisdiction of the] sentencing court under 28 U.S.C. § 2255, and that claims seeking to challenge the execution or manner in which the sentence is served shall be filed in the court having jurisdiction over the prisoner's custodian under 28 U.S.C. § 2241.

*Terrell v. United States*, 564 F.3d 442, 447 (6th Cir. 2009) (internal quotation marks omitted). In short, 28 U.S.C. § 2255 provides the primary avenue for federal prisoners seeking relief from an unlawful conviction or sentence, not § 2241. *See Capaldi v. Pontesso*, 135 F.3d 1122, 1123 (6th Cir. 2003).

Here, Westine is not challenging the execution of his sentence, such as the computation of sentence credits or parole eligibility, issues which fall under the ambit of § 2241. Instead, Westine challenges the validity of his underlying 1992 money laundering conviction, claiming that the district court lacked subject matter jurisdiction over that criminal case and failed to

5

properly advise him of his appeal rights. Westine also claims that his 1992 money laundering conviction has been rendered constitutionally infirm based on the subsequent *Santos* decision. Westine therefore challenges the constitutionality of his 1992 money laundering conviction under § 2241 by way of the "savings clause" of § 2255(e). However, § 2241 is not the proper mechanism for asserting two of his three claims.

A federal prisoner may challenge the legality of his detention under § 2241 if his remedy under § 2255(e) is found to be inadequate or ineffective. *See Wooten v. Cauley*, 677 F.3d 303, 306-07 (6th Cir. 2012); *Charles*, 180 F.3d at 756. This exception does not apply where a prisoner fails to seize an earlier opportunity to correct a fundamental defect in his or her convictions under pre-existing law, or actually asserted a claim in a prior post-conviction motion under § 2255 but was denied relief. *Charles*, 180 F.3d at 756.

Under this doctrine, the Court can, and will, quickly dispose of Westine's first two claims, *i.e.*, that the Ohio district lacked subject matter jurisdiction over his 1992 criminal case, and that the Ohio district court violated his Fifth Amendment right to due process of law by failing to advise him of his appeal rights in that proceeding. Westine could and should have raised both of these arguments either on direct appeal of his conviction, or in his numerous § 2255 motions, as the facts underlying these claims would have been known to him either when he filed his direct appeal or at the latest, when he filed his § 2255 motions in the district court. Likewise, assuming that Westine previously but unsuccessfully raised those same claims earlier, he may not regurgitate them in this § 2241 proceeding.

As discussed, the remedy under § 2255 is not inadequate where a petitioner either failed to assert a legal argument in a § 2255 motion, or where he asserted a claim but was denied relief

on it. *Charles*, 180 F.3d at 756-58; *Rumler v. Hemingway*, 43 F. App'x 946, 947 (6th Cir. 2002). Section 2241 is not an additional, alternative, or supplemental remedy to the one provided in § 2255. *Charles*, 180 F.3d at 758; *see also Lucas v. Berkebile*, No. 7:11–28–HRW, 2012 WL 2342888, at *2 (E.D. Ky. June 19, 2012) ("Section 2241 is not available to a petitioner who merely wishes to reargue claims considered and rejected in a prior motion under Section 2255."). As to these two arguments, Westine's § 2241 petition is nothing more than an attempt to get another bite at the apple.

**B**

The Court now turns to Westine's argument based on *Santos*, in which Justice Stevens issued a concurring opinion wherein he explained that "proceeds" for purposes of the money-laundering statute could be interpreted as requiring a showing of profits in some cases and gross receipts in others. *Santos*, 553 U.S. 507, 524-28 (Stevens, J., concurring). The following year, in *United States v. Kratt*, 579 F.3d 558, 562 (6th Cir. 2009), the Sixth Circuit recognized Justice Stevens's concurrence as the controlling opinion. In *Kratt*, the Sixth Circuit held that the proceeds-equals-profits interpretation of 18 U.S.C. § 1956 is "a new interpretation of statutory law." *Kratt*, 579 F.3d at 560. In April 2012, the Sixth Circuit held that *Santos* applies retroactively, because "the new definition of a key phrase in the money laundering statute [was] a substantive change of law." *Wooten v. Cauley*, 677 F.3d 303, 308 (6th Cir. 2012).

"Under the *Santos-Kratt* framework, a merger problem arises when defining 'proceeds' as 'receipts' automatically makes commission of the predicate offense a commission of money laundering and where the predicate offense carries a much lower statutory maximum than the associated money laundering charge." *United States v. Crosgrove*, 637 F.3d 646, 655 (6th Cir.

2011). Put differently, if the predicate offense is, standing alone, "sufficient to prove both money laundering and mail/wire fraud," the two crimes potentially merge. *See Wooten*, 677 F.3d at 310 (citing *Crosgrove*, 637 F.3d at 655). For purposes of *Santos*, however, the merger must "radically increase[ ] the sentence for that crime." *See Kratt*, 579 F.3d at 562 (quoting *Santos*, 553 U.S. at 528 (Stevens, J., concurring)).

This Court takes judicial notice of the fact that Westine has asserted a *Santos* claim in two prior § 2241 proceedings. Westine first asserted a *Santos* claim challenging his 1992 money laundering conviction in federal court in California, not long after *Santos* was rendered on June 2, 2008. *See John G. Westine v. Joseph Norwood*, No. CV 08-4766-R-(JWJ) (C.D. Cal. 2008). The California district court denied Westine's § 2241 petition, concluding that Westine was required to assert his claim in a § 2255 motion in the Ohio district court where he was sentenced, and further determined that the Sixth Circuit Court of Appeals' September 17, 2002, Order barring Westine from filing any collateral challenges to his 1992 criminal conviction did not change that result. *Westine v. Joseph Norwood*, No. CV 08-4766-R-(JWJ), 2008 WL 4534280 (C. D. Cal. Oct. 7, 2008).

In 2010, Westine asserted a second *Santos* challenge to his 1992 money laundering conviction in a Missouri federal court, arguing that his handling of money did not meet the "profits" definition of proceeds established in *Santos*. *See John G. Westine v. Marty C. Anderson*, No. 04-3261-CV-S-RED-H (W.D. Mo. 2010). The Missouri district court denied Westine's § 2241 petition, finding that *Santos* had not been held to apply retroactively, and that his argument about the definition of proceeds versus profits was one of legal innocence, which

would not meet "the extraordinarily high standard of actual innocence." *Westine v. Anderson*, No. 04-3261-CV-S-RED-H, 2010 WL 1170551 (W. D. Mo. Mar. 15, 2010)

Again, according to the BOP's website, as of May 26, 2015, Westine is not identified as being in federal custody, which creates a question as to whether Westine has legal standing to challenge his 1992 money laundering conviction.[4] If Westine has legal standing to collaterally challenge his 1992 money laundering conviction in this § 2241 proceeding, the next question is whether *Santos* provides substantive support for his habeas claims, given that in 2012, the Sixth Circuit Court of Appeals determined that *Santos* applies retroactively. *See Wooten*, 677 F.3d at 308. The respondent will be directed to file a response of **no more than ten (10) pages**, excluding attachments, addressing Westine's standing to challenge his 1992 money laundering conviction and whether that case presents a merger problem under *Santos*. Westine's motion requesting this Court to "forthwith" issue a writ of habeas corpus [R. 10] will be denied as moot.

### III

Accordingly, it is hereby **ORDERED** as follows:

(1)     Petitioner John G. Westine's first two claims (that the district court in Ohio lacked subject matter jurisdiction over his 1992 criminal case, and that district court in Ohio violated his Fifth Amendment right to due process of law by failing to advise him of his appeal rights in that criminal proceeding) are **DISMISSED**.

(2)     Within sixty (60) days of the date of entry of this Order, the Respondent must file a response of **no more than ten (10) pages**, excluding attachments, to Westine's § 2241 petition.

---

[4] Westine has filed another § 2241 petition in this Court, in which he challenges alleged actions or omissions of the United States Parole Commission. *See Westine v. Billy Roberts*, No. 3:15-CV-10-GFVT (E. D. Ky. 2015). In that proceeding, Westine alleged that he was released from the BOP's custody on October 31, 2011. [*Id.*, R. 1, p. 5, § 13(b), therein] However, the Ohio district court imposed a 3-year supervised release term as part of Westine's 1992 sentence, and that fact may affect whether Westine currently has standing to challenge his 1992 conviction.

The response shall address the factual allegations and legal claims contained in the petition, particularly addressing whether Westine has standing to challenge his 1992 money laundering conviction; the application, if any, of *United States v. Santos*, 553 U.S. 507, 128 (2008), to Westine's 1992 Ohio money laundering conviction; and whether Westine's 1992 conviction presents a merger problem based on *Santos*. The Respondent shall also include as attachments any documentary evidence relevant either to Westine's claim or to his response.

(3) Westine's motion requesting this Court to "forthwith" issue a writ of habeas corpus [**R. 10**] is **DENIED** as **MOOT**.

(4) The Clerk of the Court shall, by certified mail, send a copy of the petition [R. 1] and all attachments thereto, and this Order, to (a) Respondent, Billy Roberts, Jailer of the Franklin County Jail, in Frankfort, Kentucky, (b) the Attorney General for the United States, and (c) the United States Attorney for the Eastern District of Kentucky.

(5) For future reference, Westine is reminded that he must keep the Clerk of the Court informed of his current mailing address. Failure to notify the Clerk of any address change may result in dismissal.

**(6) Westine is also reminded that he must send a copy of every document he files to the Respondent or his attorney. The original document which Westine files with the Court must include his statement certifying that he has done so and the date the document was mailed to the Respondent. The Court will disregard any document filed without the required certification.**

(7) Westine must communicate with the Court solely through notices or motions filed with the Court, and should not send correspondence to this Judge's chambers.

This June 3, 2015.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge